2001-NMCA-069

32 P.3d 784

**C.F.T. DEVELOPMENT, LLC, a New Mexico limited liability company, Petitioner–Appellant,**

v.

**BOARD OF COUNTY COMMISSIONERS OF TORRANCE COUNTY, Respondent–Appellee.**

No. 20,548.

Court of Appeals of New Mexico.

June 11, 2001.

William J. Darling, Margaret P. Armijo, William J. Darling & Associates, P.A., Albuquerque, for Appellant.

Anthony B. Jeffries, Albuquerque, for Appellee.

## OPINION

BOSSON, Chief Judge.

{1} The Board of County Commissioners of Torrance County reviewed and rejected a subdivision plat submitted by the developer, C.F.T. Development, LLC (CFT). After an unsuccessful appeal to the district court, CFT brings its case to this Court on a writ of certiorari. In agreeing with the decision of the district court, we clarify the limited grounds on which this Court grants certiorari and reviews a district court decision when the district court has acted in its appellate capacity in reviewing the decision of an administrative agency. We also clarify the important role played by county commissions under the New Mexico Subdivision Act in performing an independent review of proposed subdivisions within their jurisdiction. See NMSA 1978, §§ 47–6–1 to –29 (1973, as amended through 1999).

## BACKGROUND

{2} CFT applied to the Planning and Zoning Board of Torrance County for plat approval to develop a 152–acre subdivision consisting of 123 single-family lots, averaging slightly more than one acre each. Public hearings were conducted by the Planning and Zoning Board, and the parties presented various reports, opinions, and live testimony both in favor of and in opposition to the proposed subdivision. At the conclusion of the hearing process, the Planning and Zoning Board recommended to the Torrance County Commission that the subdivision be approved. The County Commission then conducted a public hearing at which it heard testimony from numerous concerned citizens and other witnesses, both lay and expert. The County Commission also considered the reports and other evidence that had been presented to the Planning and Zoning Board. Ultimately, the County Commission rejected the recommendation of the Planning and Zoning Board and voted not to approve CFT's proposed subdivision.

{3} CFT then appealed to the district court. Initially, the district court remanded the matter to the County Commission so it could state in writing its reasons for denying the subdivision application as required by county regulations. The County Commission then entered detailed findings of fact and conclusions of law explaining its reasons for denying the proposed subdivision, and the matter was once again heard on appeal by the district court. After considering the record of proceedings below and legal briefs presented by the parties on appeal, the district court entered its order upholding the County Commission. The district court sustained the County Commission's findings of fact and conclusions of law "as being supported by substantial evidence upon a whole record review." The court also concluded that the County Commission's denial of the proposed subdivision was "not arbitrary, capricious or otherwise contrary to law." CFT then attempted to appeal to this Court.

{4} In lieu of an appeal, the Court of Appeals afforded CFT an opportunity to file a petition for writ of certiorari. See Hyden v. N.M. Human Servs. Dep't, 2000–NMCA–002, ¶ 17, 128 N.M. 423, 993 P.2d 740. In that petition, CFT set forth its reasons why we should grant the writ. CFT claimed, much as it had previously argued to the district court, that the decision of the County Commission was arbitrary, capricious, an

abuse of discretion, not in accordance with law, and not supported by substantial evidence. The petition also alleged that CFT's subdivision application complied with all applicable county regulations and zoning ordinances. The petition further claimed that the County Commission had applied an unlawful and vague standard in rejecting its subdivision application contrary to the authority granted counties under the New Mexico Subdivision Act. We granted the petition and issued a writ of certiorari to the district court.

{5} Before addressing the merits of CFT's legal arguments, we take this opportunity to discuss the limited grounds for granting certiorari and reviewing a decision of the district court when the district court, acting in its appellate capacity, has reviewed the decision of an administrative agency. *See* NMSA 1978, § 39–3–1.1 (1999); Rule 12–505 NMRA 2001. As part of that discussion, we specify which of CFT's arguments we can entertain on certiorari, and which arguments we cannot.

## DISCUSSION

### *Scope of Judicial Review on Certiorari*

{6} We have previously described Section 39–3–1.1 as "comprehensive administrative appeals legislation materially changing the method by which parties aggrieved by a final decision of certain administrative agencies could seek appellate review." *Hyden*, 2000–NMCA–002, ¶ 2, 128 N.M. 423, 993 P.2d 740. Under Section 39–3–1.1(A), which went into effect September 1, 1998, if final agency decisions are "placed under the authority of [the statute] by specific statutory reference," then appeals from the agency lie directly to the district court sitting in its appellate capacity. *See also VanderVossen v. City of Espanola*, 2001–NMCA–016, ¶¶ 7–16, 130 N.M. 287, 24 P.3d 319, *cert. granted*, No. 26,832, 130 N.M. 213, 22 P.3d 681. On appeal, the district court reviews the agency decision under what is commonly called an administrative standard: whether the agency acted fraudulently, arbitrarily or capriciously; in accordance with law; or with substantial evidentiary support. *See* § 39–3–1.1(D); Rule 1–074(Q) NMRA 2001. From the final appellate decision of the district court, a party aggrieved may seek review in the Court of Appeals only by filing a petition for writ of certiorari, which may be granted at the discretion of this Court. *See* § 39–3–1.1(E), (F).

{7} As with many other kinds of agency final decisions, the legislature has specifically made Section 39–3–1.1 applicable to appeals from county commission decisions under the New Mexico Subdivision Act: "A party who is or may be adversely affected by a decision of the board of county commissioners in approving or disapproving a preliminary or final plat may appeal to the district court pursuant to the provisions of Section 39–3–1.1 NMSA 1978." Section 47–6–15(B) (1999). Thus, appeals under the Subdivision Act, such as the present one, are made to the district court which reviews them under an administrative standard. Any judicial review thereafter is limited to a writ of certiorari to the district court.

{8} Soon after the effective date of Section 39–3–1.1, our Supreme Court promulgated Rule 12–505 for the express purpose of governing the limited grounds on which this Court may issue a writ of certiorari to review the decision of a district court in an administrative appeal. *See Hyden*, 2000–NMCA–002, ¶ 2, 128 N.M. 423, 993 P.2d 740. Under Rule 12–505(D)(5), the petitioner must specify one of four grounds for granting the writ. Those grounds are: (a) a conflict between the district court order and a prior appellate opinion of either this Court or the Supreme Court; (b) a conflict between the district court order and any statutory provision, ordinance or agency regulation; (c) a significant question of law under the New Mexico or United States Constitutions; or (d) an issue of substantial public interest that should be determined by this Court. No other grounds exist for issuing a writ of certiorari to the district court to review administrative appeals. Granting the petition for a writ of certiorari is a matter that rests in the sound discretion of this Court. Rule 12–505(B).

{9} The grounds for granting certiorari notably omit much of what commonly falls within an administrative standard of review. Therefore, it appears that Section 39–3–1.1 and Rule 12–505 assign to the dis-

trict court, but no longer to this Court, the task of reviewing whether a final decision made by an agency is arbitrary, capricious, fraudulent, or an abuse of discretion. The task of determining whether agency decisions are supported by substantial evidence is likewise the province of the district court sitting in its appellate capacity.

{10} Thus far, we have referred only to the plain language of Rule 12–505 and Section 39–3–1.1 to decide the effect of certiorari procedure on our review of administrative appeals. However, we find much guidance in the Supreme Court's description of how it exercises its own certiorari power. *See* Rule 12–502 NMRA 2001. The Supreme Court recently made clear that the grounds for certiorari under the rule limit the Court's jurisdiction when it proceeds under a writ of certiorari. *See State v. Conn*, 115 N.M. 99, 100, 847 P.2d 744, 745 (1993). Significantly, the Supreme Court emphasized that its jurisdiction in certiorari cases "does not encompass weighing or reviewing the resolution of factual issues by the [lower court]." *Id.* In *Conn*, the Supreme Court specifically held that a writ of certiorari did not allow it to review and reverse an opinion of the Court of Appeals in which our Court held that the district court had abused its discretion by admitting into evidence a prior conviction of the defendant. *See id.* at 101, 847 P.2d at 746. Matters of abuse of discretion were solely for the initial appellate court to review. *See id.*

{11} Comparing Rule 12–502 with Rule 12–505 demonstrates that the criteria for issuance of the writ are practically identical in the two rules. The Supreme Court's interpretation of the criteria for one rule, giving those criteria jurisdictional footings as it did in *Conn*, is highly relevant to how this Court should view similar criteria in Rule 12–505. Therefore, we hold that Rule 12–505 limits both the grounds on which we will issue a writ of certiorari and the review we will thereafter conduct of a district court decision in an administrative appeal.

{12} Applying these principles to the case before us, we conclude that much of what CFT alleges in its petition exceeds our review on certiorari. This Court does not

review on certiorari whether the County Commission acted in an arbitrary and capricious manner or abused its discretion. The same is true for CFT's claim that the decision of the County Commission is unsupported by substantial evidence. CFT makes no argument that its issues rise to a level of substantial public interest. *See* Rule 12–505(D)(5)(d). While, in theory, arbitrary conduct, abuse of discretion, or lack of substantial evidence might be inextricably integrated into an issue of substantial public interest and justify our review on that ground, no such case is present here. We decline to define in this opinion those seemingly rare instances when, or whether, a petitioner could successfully fashion such an argument. *Cf. Deats v. State*, 80 N.M. 77, 80, 451 P.2d 981, 984 (1969) (declining on certiorari to consider an abuse of discretion issue that was not of substantial public interest).

{13} CFT had its opportunity to raise issues of arbitrariness, abuse of discretion, and lack of substantial evidence on appeal to the district court under a whole record administrative standard of review, and CFT did so. The district court heard those arguments, gave them due consideration, reviewed the record of proceedings below, and issued its decision. Having lost, CFT does not get to reargue the same issues to this Court, as was previously the practice. Instead, CFT must meet the criteria for certiorari set forth in Rule 12–505(D)(5).

{14} Cases cited by CFT all precede the enactment of Section 39–3–1.1, and the issuance of Rule 12–505. *See, e.g., Embudo Canyon Neighborhood Ass'n v. City of Albuquerque*, 1998–NMCA–171, 126 N.M. 327, 968 P.2d 1190; *Huning Castle Neighborhood Ass'n v. City of Albuquerque*, 1998–NMCA–123, 125 N.M. 631, 964 P.2d 192; *W. Old Town Neighborhood Ass'n v. City of Albuquerque*, 1996–NMCA–107, 122 N.M. 495, 927 P.2d 529. Those cases should no longer be cited for the proposition that this Court reviews final agency decisions under an administrative standard, at least not for those agencies legislatively included within the ambit of Section 39–3–1.1. We also note that an opinion this Court issued only recently makes a similarly incorrect reference to re-

viewing zoning appeals under an administrative standard of review. *See VanderVossen,* 2001–NMCA–016, ¶ 27, 130 N.M. 287, 24 P.3d 319.

{15} The foregoing discussion does not dispose of CFT's arguments; it only limits them. Giving a fair reading to CFT's petition for a writ of certiorari, we understand CFT to argue, in addition to substantial evidence and abuse of discretion, that the County Commission exceeded its authority under county regulations and the New Mexico Subdivision Act when it rejected CFT's application for plat approval. In so arguing, CFT clearly states a ground for certiorari specified in Rule 12–505(D)(5)(b): "any statutory provision, ordinance or agency regulation with which it is asserted the final order of the district court is in conflict." Therefore, with the previously described limitations in mind, we proceed to review the district court order and the decision of the County Commission upon which it is based, as to whether it conflicts with the Subdivision Act or pertinent county regulations.

*Conflict With the Subdivision Act and County Regulations*

{16} The County Commission's Statement of Findings of Fact and Conclusions of Law specifies its reasons for denying plat approval. To the extent those reasons were upheld on appeal to the district court, they include: (a) the potential contamination of the water supply in the area from the proposed method of liquid waste disposal, namely, individual septic tanks proposed for each lot; (b) the potential negative impact of the proposed subdivision upon the infrastructure and public resources of the County including schools and social services; and (c) the size of the proposed lots being less than the preferred size of 2.5 acres. The County also provided a severance clause in which it specified that each of these reasons was "an independent basis for the decision of the Commission" denying plat approval.

{17} The question we must decide is narrow: whether the district court order upholding the County Commission conflicts with any statute, ordinance, or regulation. Because of the severance clause, if any one of the reasons given by the County for rejecting the subdivision does not conflict with any statute, ordinance, or regulation, then our task is complete. We will affirm the district court whether or not any of the other reasons given by the County Commission might be in conflict. We begin by addressing the County Commission's findings and conclusions concerning liquid waste disposal.

{18} Citing to the evidence before it, the County Commission found that CFT's liquid waste proposal posed "a substantial and unacceptable risk of contamination of an important aquifer constituting the source of drinking water for residents of Torrance County in this and similar areas." Accordingly, the County Commission concluded that CFT had failed in its burden under law to show that its liquid waste disposal system would satisfy county regulations. According to county regulations, the developer was required to show that its proposed liquid waste disposal system would not "potentially pollute or cause high nutrient values in any body of water ... or cause a potential hazard to public health."

{19} Under Section 47–6–11(F) (1999) of the Subdivision Act, once a county receives a subdivision proposal, the board of county commissioners must request opinions from various state officials such as the state engineer, department of environment, and the soil and water conservation district, to determine whether the proposed subdivision complies with state regulations. With respect to liquid waste disposal, the department of environment must give its opinion as to: (a) whether the developer can furnish measures to protect the water supply from contamination in conformity with state regulations, (b) whether there are sufficient liquid and solid waste disposal facilities to fulfill the requirements of the subdivision in conformity with state regulations, and (c) whether the developer can fulfill the proposals set forth in its disclosure statement concerning water quality and liquid and solid waste disposal facilities. *See* § 47–6–11(F)(2).

{20} Upon receiving CFT's subdivision proposal, the County duly solicited the relevant opinions from the required state agen-

cies, and in each case the proposal received a positive evaluation. This included an opinion from the New Mexico Environment Department that the proposed plan for liquid waste disposal was suitable and "can be fulfilled" by individual septic tanks. The opinion further stated that the proposal "conforms with [County] Regulations."

{21} Notwithstanding the Environment Department's approval, hearings conducted before the Planning and Zoning Board and the County Commission produced documentary evidence and live testimony which indicated that individual septic tanks in the proposed subdivision *would* pose a threat of contamination to the water supply. The County Commission based its rejection of CFT's application on this very evidence which, in turn, brings us to the nub of CFT's argument.

{22} CFT maintains that once the Environment Department approved the subdivision's plan for liquid waste disposal, the County had no further discretion to deny its application on this same ground. CFT takes the position that its subdivision complied with all requirements of the Subdivision Act. Having achieved that compliance, CFT argues that the County was required to approve its subdivision and had no discretion to impose any additional review or criteria in rejecting the application. Thus, CFT argues, the County exceeded its statutory authority under the Subdivision Act in denying CFT's application.

{23} In our view, the Subdivision Act is not nearly as one-dimensional as CFT would suggest. The Subdivision Act envisions, and indeed requires, that each county fashion its own regulations governing the development of subdivisions within its jurisdiction. *See* § 47–6–9 (1995). The criteria for preliminary plat approval include a determination by the county *"whether the subdivision will conform with the New Mexico Subdivision Act [this article] and the county's subdivision regulations."* Section 47–6–11(C)(2) (1995).

{24} Nowhere in the Act is it suggested that these county regulations are to be mere mirror images of state regulations or that county approval is to be a rubber stamp of state approval. To the contrary, before adopting regulations county officials are to "consult" with state officials, and state officials are afforded an opportunity to comment on proposed county regulations, whether those comments are "favorable or unfavorable." Section 47–6–10(A), (G) (1995). Thus, the Act bestows upon a county an independent role in fact-finding and in assessing the merits of a proposed subdivision plat. State agency approval is a first step. After receiving the opinions of the state agencies specified in Section 47–6–11(F) (1995), the Subdivision Act then directs the county to *"weigh these opinions in determining whether to approve the preliminary plat at a public hearing."* Section 47–6–11(G) (1995).

{25} The plain language of the Subdivision Act sets up a statutory scheme of divided power and dual responsibility for subdivision regulation wherein a county and the relevant state agencies play important, yet separate, roles. In the last analysis, however, the final decision whether or not to approve the subdivision clearly rests with the county. Under the Act, a county is to apply its own discretion in "weighing" state agency opinions along with other evidence and make its own decision consistent with the requirements of both county regulations and the Subdivision Act. In this case, it is apparent that the County Commission exercised the very discretionary authority granted by the Subdivision Act.

{26} Thus, we hold that by denying approval of CFT's subdivision, the County Commission acted within its authority under the Subdivision Act. The County Commission gathered its own evidence, weighed that evidence along with the opinions of the relevant state agencies, and ultimately rejected CFT's application for plat approval, notwithstanding the Environment Department's approval. In so doing, the County Commission acted within both the letter and the spirit of the Subdivision Act. The County Commission also acted within the scope of its own regulations which prohibit subdivisions that might "potentially pollute" the water supply.

{27} Having decided that the actions of the County Commission, and therefore the

district court, did not "conflict" with any statute, regulation, or ordinance, our inquiry under certiorari ends. *See* Rule 12–505. As described above, we do not pass on the evidence in support of, or in conflict with, the decision of the County Commission rejecting CFT's proposal for liquid waste disposal in this case.

## CONCLUSION

{28}   We affirm the order of the district court upholding the decision of the County Commission.

{29}   IT IS SO ORDERED.

PICKARD and SUTIN, JJ., concur.